UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
CIVIL DIVISION

| | |
|---|---|
| LUKE CLARK,<br>ON BEHALF OF HIMSELF AND ALL OTHERS<br>SIMILIARLY SITUATED,<br><br>                      Plaintiff,<br>v<br><br>CAVALRY PORTFOLIO SERVICES, LLC,<br>CAVALRY SPV I, LLC, AND<br>SCHACHTER PORTNOY, L.L.C.,<br><br>                      Defendants. | Civil Action, File No.<br>7:17-cv-00099 |

**COMPLAINT**

**DEMAND FOR TRIAL BY JURY**

Plaintiff, Luke Clark [hereinafter "Clark"] on behalf of himself and all others similarly situated, by and through his attorney, Mitchell L. Pashkin, Esq., complains of Defendants, Cavalry Portfolio Services, LLC (hereinafter "CPS"), Cavalry SPV I, LLC (hereinafter "CSI"), and Schachter Portnoy, L.L.C ("SP") and shows the court the following:

1. This court has jurisdiction of this case pursuant to 15 U.S.C. § 1692k(d) and 28 USCS § 1331 and pursuant to 28 USCS § 1332 (d) (2) (A).

2. This court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 based on the below claim under New York General Business Law § 349.

3. Venue in this district is proper based on (1) CPS, CSI, and SP regularly transacting business within this district by and deriving substantial revenue from services rendered in this district including but not limited to the collection of debt from consumers who reside in this district; (2) the occurrences which form the basis for this Complaint having occurred in whole or in

part in this district; and (3) CPS and CSI both possessing a license from the New York City Department of Consumer Affairs to operate as a "Debt Collection Agency" in New York City which includes this district.

4. Plaintiff demands a trial by jury pursuant to FRCP 38 (b).

5. CPS is a Delaware Limited Liability Corporation and a New York Foreign Limited Liability Corporation located in New York State in the County of Westchester in Valhalla, NY.

6. Based upon Exhibit A and upon CPS possessing a license from the New York City Department of Consumer Affairs to operate as a "Debt Collection Agency", the principal purpose of CPS is the collection of debts using the instrumentalities of interstate commerce, including mails and telephone; and it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another.

7. On Exhibit A, CPS identifies itself as a "debt collector" attempting to collect an alleged debt. Exhibit A contains disclosures required to be made by a "debt collector" under the FDCPA as part of a communication attempting to collect a 'debt' or in connection with the collection of a "debt".

8. Based upon the allegations in the above two paragraphs, CPS is a "debt collector" as defined by 15 U.S.C. § 1692a(6) of the FDCPA.

9. CSI is a Delaware Limited Liability Corporation and a New York Foreign Limited Liability Corporation located in New York State in the County of Westchester in Valhalla, NY.

10. Based upon paragraph 2 of Exhibit B and upon CSI possessing a license from the New York City Department of Consumer Affairs to operate as a "Debt Collection Agency", the principal purpose of CSI is the collection of debts using the instrumentalities of interstate commerce, including mails and telephone; and it regularly collects or attempts to collect,

directly or indirectly, debts owed or due or asserted to be owed or due to another.

11. On Exhibit C, CSI identifies itself as a "debt collector" attempting to collect an alleged debt. Exhibit A contains disclosures required to be made by a "debt collector" under the FDCPA as part of a communication attempting to collect a 'debt" or in connection with the collection of a "debt".

12. Based upon the allegations in the above two paragraphs, CSI is a "debt collector" as defined by 15 U.S.C. § 1692a(6) of the FDCPA.

13. SP is a New Jersey Professional Service Limited Liability Company and a New York Professional Service Foreign Limited Liability Company located in New York State in the County of Westchester in Valhalla, NY.

14. As revealed from a search of the New York State Unified Court System eCourts website ("eCourts"), on a consistent and regular basis over a period of numerous years through the present SP has acted as the attorney for a plaintiff in consumer debt a collection lawsuit.

15. On Exhibit D, SP identifies itself as a "debt collector" attempting to collect an alleged debt. Exhibit D contains disclosures required to be made by a "debt collector" under the FDCPA as part of a communication attempting to collect a 'debt" or in connection with the collection of a "debt".

16. Based upon the allegations in the above two paragraphs, SP is a "debt collector" as defined by 15 U.S.C. § 1692a(6) of the FDCPA.

17. Clark is a natural person who resides at 1543 See Canyon Road, SN Luis Obisp, CA 93405.

18. Clark is a "consumer" as defined by 15 U.S.C. § 1692(a)(3) of the FDCPA.

19. On or about August 15, 2012, SP, on behalf of CSI and as CSI's attorneys, filed a Summons and Complaint against Clark in the Supreme Court of the State of New York, County of

Sullivan under Index No. 2248/2012 (hereinafter "State Court Action"). The Summons and Complaint in the State Court Action is annexed as Exhibit E.

20. Paragraph 3 and 4 of the Complaint allege that Clark executed and breached a "consumer credit contract". The Complaint sets forth that CSI is the assignee of HSBC Bank Nevada, N.A. SP on behalf of CSI filed the State Court Action against Clark in his individual capacity. Based on the above, the debt alleged in the Complaint to be due from Clark was past due, arose out of a transaction used primarily for personal, family or household purposes, and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

21. As set forth in Exhibit F, SP had the Summons and Complaint allegedly served on Clark at 227 Haring Road, Barryville, NY 12719; and upon information and belief and based on the address listed in the document annexed as Exhibit G, SP did an additional mailing of the Summons and Complaint to Clark at 227 Haring Road, Barryville, NY 12719.

22. For at least four years prior to the date SP filed and served the aforementioned Summons and Complaint and did the additional mailing and on the date SP filed and served the aforementioned Summons and Complaint and did the additional mailing, Clark resided in California.

23. 227 Haring Road, Barryville, NY 12719 is the address of Clark's parents. For many years prior to the service of the Summons and Complaint and the additional mailing through the present, Clark has been estranged from his parents and has had no contact with his parents. Clark's parents never forwarded a copy of the Summons and Complaint to Clark and never communicated with Clark about the Summons and Complaint.

24. In Exhibit A, CPS claims as follows: "On or about October 9, 2012, Mr. Clark contacted and spoke with a representative from the law firm regarding the account. On or about

November 15, 2012, the law firm attempted to contact Mr. Clark to further discuss the account, but was unsuccessful." Plaintiff is not the Mr. Clark who contacted the law firm; and Plaintiff never received any communications from the law firm.

25. Clark never knew about the Summons and Complaint until August 25, 2015; and as a result, Clark never responded to the Summons and Complaint. Therefore, on January 14, 2013, SP obtained a default Judgment against Clark in favor of CSI.

26. Clark knew nothing about the Summons and Complaint or the default Judgment until he received requested and received a copy of his credit report on August 25, 2015. See Exhibit H.

27. Plaintiff suffered injuries as a result of the Summons and Complaint and resulting default Judgment including but not limited to (a) damage to his credit, the repeated inability to obtain financing, and an increase in his cost to obtain financing, (b) becoming subjected to litigation which there was no right to commence along with the resulting costs of time and money and the emotional distress, (c) having a judgment against him or a judgment lien against his property, (d) the emotional stress and anxiety along with the financial and time costs resulting from the potential to have a judgment against him used to seize his assets when there was no legal right to obtain the judgment, and (e) and the below violations of his rights under the FDCPA.

## FIRST CAUSE OF ACTION

28. Plaintiffs repeat and re-allege the allegations in paragraphs 1-27 of this Complaint.

29. Upon information and belief, the "consumer credit contract" referred to in the Complaint is a contract for a credit card; and the alleged debt related to Clark's alleged use of a credit card account and subsequent failure to pay the balance owed on the credit card account.

30. A "consumer credit contract" relating to a credit card account is not signed by a consumer; and a debt collector violates 15 USC 1692i if it does not bring an action to collect on the credit card debt "in the judicial district or similar legal entity in which such consumer resides at the commencement of the action". 15 USC 1692i(a)(2)(B); and <u>Hess v. Cohen & Slamowitz</u>, 637 F.3d 117 (2d Cir. 2011).

31. For at least four years prior to the date SP filed and served the aforementioned Summons and Complaint and on the date SP filed and served the aforementioned Summons and Complaint, Clark resided in California.

32. The State Court Action was a legal action against Clark in a judicial district in which Clark did not reside at the time of the commencement of the legal action.

33. CSI is vicariously liable for the actions of SP via CSI's participation in the control and/or supervision of the actions of SP, via SP being an agent of CSI, and/or via the attorney/client relationship between SP and CSI.

34. Exhibit A is a response to the Consumer Financial Protection Bureau submitted by CPS regarding a complaint Clark submitted to the Consumer Financial Protection Bureau about CSI. Upon information and belief and based on Exhibit A, CSI is a wholly owned subsidiary of CPS. Upon information and belief and based on Exhibit A and the above allegations, CPS, a "debt collector", directs and/or requires and/or allows CPS's wholly owned subsidiaries such as CSI to carry out collection efforts on CPS's behalf and for the sole benefit of CPS; CPS always possesses the beneficial interests in the collection accounts which CSI attempts to collect in the name of CSI; and CPS directly actively participates in and/or controls and/or supervises the entire process of attempting to collect the debts held in the name of CSI including the selection and supervision and continuous evaluation of the

effectiveness of collections attorneys such as SP.  For the above reasons, CPS is vicariously liable for the actions of CSI and SP.

35. Based on the allegations set forth in this cause of action, Defendants violated 15 USC 1692i (a) (2).

## SECOND CAUSE OF ACTION

36. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-26 of this Complaint.

37. The Complaint sets forth that CSI is the assignee of HSBC Bank Nevada, N.A.  Prior to the time HSBC Bank Nevada, N.A. assigned the alleged debt, HSBC Bank Nevada, N.A. took actions or failed to take actions which amounted to a waiver by HSBC Bank Nevada, N.A. of its right to charge Clark interest subsequent to the date on which HSBC Bank Nevada, N.A. charged-off Clark's alleged debt or subsequent to the date on which HSBC Bank Nevada, N.A. sent Clark a final account or billing statement.

38. Even if there was no above waiver, HSBC Bank Nevada, N.A. had no legal right to charge Clark interest subsequent to the date on which HSBC Bank Nevada, N.A. charged-off Clark's alleged debt or subsequent to the date on which HSBC Bank Nevada, N.A. sent Clark a final account or billing statement.

39. As a result of HSBC Bank Nevada, N.A.'s aforementioned waiver or HSBC Bank Nevada, N.A.'s non-possession of the aforementioned legal rights regarding charging Clark interest, any assignee of Clark's alleged debt to HSBC Bank Nevada, N.A., including but not limited to CSI, had no legal right to attempt to collect from Clark any amount beyond the "Principal Balance" amount set forth in Exhibit A.

40. As a result of the above, CSI's statement in Exhibit E that Clark owed interest in addition to the sum of $3,188.22 and SP applying for and obtaining a default Judgment (Exhibit E) against Clark in favor of CSI in an amount which included interest in addition to the sum of $3,188.22 amounts to a violation of 15 USC 1692e, 15 USC 1692e(2)(A), 15 USC 1692e(10), 15 USC 1692f, and/or 15 USC 1692f (1).

41. CSI is vicariously liable for the actions of SP via CSI's participation in the control and/or supervision of the actions of SP, via SP being an agent of CSI, and/or via the attorney/client relationship between SP and CSI.

42. Exhibit A is a response to the Consumer Financial Protection Bureau submitted by CPS regarding a complaint Clark submitted to the Consumer Financial Protection Bureau about CSI. Upon information and belief and based on Exhibit A, CSI is a wholly owned subsidiary of CPS. Upon information and belief and based on Exhibit A and the above allegations, CPS, a "debt collector", directs and/or requires and/or allows CPS's wholly owned subsidiaries such as CSI to carry out collection efforts on CPS's behalf and for the sole benefit of CPS; CPS always possesses the beneficial interests in the collection accounts which CSI attempts to collect in the name of CSI; and CPS directly actively participates in and/or controls and/or supervises the entire process of attempting to collect the debts held in the name of CSI including the selection and supervision and continuous evaluation of the effectiveness of collections attorneys such as SP. For the above reasons, CPS is vicariously liable for the actions of CSI and SP.

43. Based on the allegations set forth in this cause of action, Defendants violated 15 USC 1692e, 15 USC 1692e(2)(A), 15 USC 1692e(10), 15 USC 1692f, and/or 15 USC 1692f (1).

## THIRD CAUSE OF ACTION

44. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-27 of this Complaint.

45. On or about August 10, 2011, Capital One Financial Corporation entered into an agreement to purchase certain assets from HSBC Finance Corporation, HSBC USA, Inc. and HSBC Technology and Services (USA) Inc. including its subsidiaries which included HSBC Bank Nevada, N.A. including but not limited to virtually all consumer credit card accounts issued by HSBC Bank Nevada, N.A.

46. Capital One Financial Corporation assigned its above rights to purchase the aforementioned assets to Capital One, National Association and Capital One Bank (USA) National Association, wholly owned subsidiaries of Capital One Financial Corporation; and as a result Capital One, National Association and Capital One Bank (USA) National Association together apparently purchased the aforementioned assets.

47. Upon information and belief and based on a review of the agreement and other documents concerning the above sale to Capital One Financial Corporation, the alleged "consumer credit contract" between Clark and HSBC Bank Nevada, N.A. referred to in the Complaint was included in the above sale to Capital One Financial Corporation.

48. Upon information and belief, (a) Capital One, National Association assigned its rights in the alleged "consumer credit contract" between Clark and HSBC Bank Nevada, N.A.to Capital One Bank (USA) National Association or (b) Capital One Bank (USA) National Association assigned its rights in the alleged "consumer credit contract" between Clark and HSBC Bank Nevada, N.A. to Capital One, National Association; and (c) subsequently the alleged "consumer credit contract" between Clark and HSBC Bank Nevada, N.A. was

assigned to CPS and then to CSI or directly to CSI.

49. In the alternative, (a) Capital One, National Association and Capital One Bank (USA) National Association together assigned the alleged "consumer credit contract" between Clark and HSBC Bank Nevada, N.A. to CPS and then CPS assigned it to CSI or (b) Capital One, National Association and Capital One Bank (USA) National Association together assigned the alleged "consumer credit contract" between Clark and HSBC Bank Nevada, N.A. to CSI.

50. Clark did not receive any notice of the assignment, transfer, or sale, if any, from HSBC Bank Nevada, N.A. to Capital One, National Association and Capital One Bank (USA) National Association.

51. HSBC Bank Nevada, N.A. did not send to Clark notice of the assignment, transfer, or sale, if any, to Capital One, National Association and Capital One Bank (USA) National Association or to Capital One, National Association.

52. Clark did not receive any notice of the assignment, transfer, or sale, if any, from Capital One Bank (USA) National Association to Capital One, National Association.

53. Capital One Bank (USA) National Association did not send to Clark notice of the assignment, transfer, or sale, if any, to Capital One, National Association.

54. Clark did not receive any notice of the assignment, transfer, or sale, if any, from Capital One, National Association to Capital One Bank (USA) National Association.

55. Capital One, National Association did not send to Clark notice of the assignment, transfer, or sale, if any, to Capital One Bank (USA) National Association.

56. Clark did not receive from the assignor any notice of the assignment, transfer, or sale to CPS.

57. The assignor to CPS did not send to Clark any notice of the assignment, transfer, or sale to CPS.

58. Clark did not receive from the assignor any notice of the assignment, transfer, or sale to CSI.

59. The assignor to CSI did not send to Clark any notice of the assignment, transfer, or sale to CSI.

60. The Complaint which SP filed and served in the State Court Action was an attempt to collect a debt and contained the following false, deceptive, or misleading representations:

    a. The Complaint in the State Court Action directly or indirectly represented to Clark and the court that CSI took assignment of the alleged debt due from Clark directly from the original creditor HSBC Bank Nevada, N.A.  These representations are material in light of the facts which an assignee of a debt must establish to prove their standing to file a lawsuit to collect the assigned debt and in light of the legal requirements imposed upon an assignee of a debt as a prerequisite to obtaining a judgment for the amount due on an assigned debt. These facts and prerequisites would not be known to the "least sophisticated consumer"; and a "least sophisticated consumer" could waive their rights to contest an assignee's standing.

    b. The Complaint in the State Court Action directly or indirectly represents to Clark and the court that CSI, as an assignee of a debt allegedly due from Clark, has standing and/or legal right to bring the State Court Action; but CSI had no standing in light of Clark's aforementioned non-receipt of a notice of assignment from each owner of the alleged debt prior to CSI.  Therefore, a lawsuit such as the State Court Action which is based on the above false, deceptive or

>   misleading allegations regarding standing is a baseless and frivolous lawsuit in an attempt to collect a debt and the statements are materially false, deceptive or misleading. See Moukengeschaie v. Eltman, Eltman & Cooper, P.C. (E.D.N.Y., 2016).
>
>   c. The Complaint in the State Court Action directly represents to Clark and the court that CSI, as an assignee of a debt allegedly due from Clark, has the legal right to a judgment against Clark for the amount of the debt allegedly due from Clark; but CSI had no right to such a judgment in light of Clark's aforementioned non-receipt of a notice of assignment from each owner of the alleged debt prior to CSI. Therefore, a lawsuit such as the State Court Action which is based on the above false, deceptive or misleading allegations regarding the legal right to a judgment in favor of an assignee of a debt is a baseless and frivolous lawsuit in an attempt to collect a debt, and the statements are materially false, deceptive or misleading. See Moukengeschaie v. Eltman, Eltman & Cooper, P.C. (E.D.N.Y., 2016).

61. CSI is vicariously liable for the actions of SP via CSI's participation in the control and/or supervision of the actions of SP, via SP being an agent of CSI, and/or via the attorney/client relationship between SP and CSI.

62. Exhibit A is a response to the Consumer Financial Protection Bureau submitted by CPS regarding a complaint Clark submitted to the Consumer Financial Protection Bureau about CSI. Upon information and belief and based on Exhibit A, CSI is a wholly owned subsidiary of CPS. Upon information and belief and based on Exhibit A and the above allegations, CPS, a "debt collector", directs and/or requires and/or allows CPS's wholly

owned subsidiaries such as CSI to carry out collection efforts on CPS's behalf and for the sole benefit of CPS; CPS always possesses the beneficial interests in the collection accounts which CSI attempts to collect in the name of CSI; and CPS directly actively participates in and/or controls and/or supervises the entire process of attempting to collect the debts held in the name of CSI including the selection and supervision and continuous evaluation of the effectiveness of collections attorneys such as SP.  For the above reasons, CPS is vicariously liable for the actions of CSI and SP.

63. Based on the above allegations in this Cause of Action, Defendants violated 15 USC § 1692e, 15 USC § 1692e(2)(A), and 15 USC § 1692e(10).

## FOURTH CAUSE OF ACTION

64. Plaintiff repeats and re-alleges the allegations in paragraphs 1-27 and 45-59 of this Complaint.

65. "[D]ebt collectors violate the FDCPA by taking or threatening to take legal action where recovery is precluded as a matter of law, see 15 U.S.C. § 1692e(5)."  Eades v. Kennedy, PC Law Offices, 799 F.3d 161, 174 (FN. 1) (2nd Cir., 2015).  It is a violation of 15 U.S.C. § 1692e(5) to file a frivolous and baseless lawsuit in an attempt to collect a debt.  See Eades v. Kennedy, PC Law Offices, 799 F.3d 161, 172-173.

66. Pursuant to common law as established by the New York courts in numerous cases, an assignee of a debt has no legal standing as a plaintiff in a court action to collect the assigned debt and has no legal right to a judgment against a debtor via a debt collection lawsuit if the alleged debtor has not received notice of assignment of the debt from each owner of the alleged debt prior to the plaintiff.

67. Clark did not receive notice of assignment of the debt from each owner of the alleged debt prior to CSI.

68. Based on the above, recovery in the State Court Action was precluded as a matter of law, the State Court Action was frivolous and baseless, and SP was without a good faith basis to file it.

69. CSI is vicariously liable for the actions of SP via CSI's participation in the control and/or supervision of the actions of SP, via SP being an agent of CSI, and/or via the attorney/client relationship between SP and CSI.

70. Exhibit A is a response to the Consumer Financial Protection Bureau submitted by CPS regarding a complaint Clark submitted to the Consumer Financial Protection Bureau about CSI. Upon information and belief and based on Exhibit A, CSI is a wholly owned subsidiary of CPS. Upon information and belief and based on Exhibit A and the above allegations, CPS, a "debt collector", directs and/or requires and/or allows CPS's wholly owned subsidiaries such as CSI to carry out collection efforts on CPS's behalf and for the sole benefit of CPS; CPS always possesses the beneficial interests in the collection accounts which CSI attempts to collect in the name of CSI; and CPS directly actively participates in and/or controls and/or supervises the entire process of attempting to collect the debts held in the name of CSI including the selection and supervision and continuous evaluation of the effectiveness of collections attorneys such as SP. For the above reasons, CPS is vicariously liable for the actions of CSI and SP.

71. Based on the allegations set forth in this Cause of Action, Defendants violated 15 U.S.C. § 1692e(5).

## FIFTH CAUSE OF ACTION

72. Plaintiff repeats and re-alleges the allegations in paragraphs 1-27, 45-59, and 66-68 of this Complaint.

73. For the reasons set forth above and below, the filing and serving of the Complaint in the State Court Action and the application for a default Judgment amounted to a deceptive act and practice on the part of Defendants.

74. The above actions are consumer oriented for the following reasons:

    a. Clark is a consumer;

    b. They were directed at or directly affected Clark;

    c. The conduct at issue against Clark, a consumer, affected or had the potential to affect similarly situated consumers for the following reasons: (1) Defendants' attempt to collect debts from hundreds of thousands of consumers throughout all of New York State via lawsuits and applications for default judgments in regard to assigned debt and/or on behalf of debt buyers/assignees; (2) These lawsuits use complaints similar in form to the Complaint against Clark, contain similar statements and misrepresentations, and contain similar requests for interest; (3) There is no legal right or standing to file these lawsuits or obtain a judgment as a result of these lawsuits or to request and obtain interest for the same reasons as set forth above in regard to Clark; and (4) These improper lawsuits and improper judgments damage consumers' credit and effect their ability to obtain financing or increase their cost to obtain financing, result in illegal judgment liens against consumers' property, illegal seizure and collection of consumers' assets, and payments by consumers toward the amount owed as a

result of these improper judgments.

75. Plaintiff suffered injuries as a result of the deceptive acts including but not limited to (a) damage to his credit, the repeated inability to obtain financing, and an increase in his cost to obtain financing, (b) becoming subjected to litigation which there was no right to commence along with the resulting costs of time and money and the emotional distress, (c) having a judgment against him or a judgment lien against his property, (d) the emotional stress and anxiety along with the financial and time costs resulting from the potential to have a judgment against him used to seize his when there was no legal right to obtain the judgment, and (e) and the aforementioned violations of his rights under the FDCPA.

76. CSI is vicariously liable for the actions of SP via CSI's participation in the control and/or supervision of the actions of SP, via SP being an agent of CSI, and/or via the attorney/client relationship between SP and CSI.

77. Exhibit A is a response to the Consumer Financial Protection Bureau submitted by CPS regarding a complaint Clark submitted to the Consumer Financial Protection Bureau about CSI.  Upon information and belief and based on Exhibit A, CSI is a wholly owned subsidiary of CPS.  Upon information and belief and based on Exhibit A and the above allegations, CPS, a "debt collector", directs and/or requires and/or allows CPS's wholly owned subsidiaries such as CSI to carry out collection efforts on CPS's behalf and for the sole benefit of CPS; CPS always possesses the beneficial interests in the collection accounts which CSI attempts to collect in the name of CSI; and CPS directly actively participates in and/or controls and/or supervises the entire process of attempting to collect the debts held in the name of CSI including the selection and supervision and continuous evaluation of the

effectiveness of collections attorneys such as SP.  For the above reasons, CPS is vicariously liable for the actions of CSI and SP.

78. As a result of the above, Defendants are liable under General Business Law section 349.

## CLASS ALLEGATIONS

79. Plaintiffs bring this action on behalf of a class pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

80. The classes consists of

    (a) (a) all natural persons (b) who between August 15, 2012 and the filing of this lawsuit have been sued by SP or by CSI resulting in a default judgment, and (c) where the Complaint in the lawsuit named the CSI's assignee as HSBC Bank Nevada, N.A.;

    (b) (a) all natural persons (b) who between August 15, 2012 and the filing of this lawsuit have been sued by SP or by CSI resulting in a default judgment (c) in an attempt to collect a debt which originated from HSBC Bank Nevada, N.A., and (d) where a portion of the chain of title leading to the plaintiff in the lawsuit included a transfer, sale or assignment from Capital One, National Association and/or Capital One Bank (USA) National Association; and

    (c) (a) all natural persons (b) who between August 15, 2012 and the filing of this lawsuit have been sued by SP or by CSI resulting in a default judgment (c) where the lawsuit or default judgment included interest other than pre-judgment interest allowed under NY CPLR 5001.

81. The class members are so numerous that joinder is impracticable. On information and belief, there are more than 50 members.

82. There are questions of law and fact common to the class members, which common questions predominate over any questions that affect only individual class members.

83. The predominant common questions are (1) whether the debt alleged in a lawsuit against a consumer to be due from the consumer originated from HSBC Bank Nevada, N.A. and a portion of the chain of title leading to the entity which brought the lawsuit against the consumer included a transfer from Capital One, National Association and/or Capital One Bank (USA) National Association and (2) whether at the time of the assignment of the debt the original creditor still had the legal right to continue to charge the consumer interest on the amount due at the time of the assignment.

84. Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases and class actions.

85. A class action is the superior means of adjudicating this dispute.

86. Individual cases are not economically feasible.

**WHEREFORE**, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the class members and against Defendants for:

1. Statutory damages ($1,000 for each plaintiff and the lesser of $500,000 or 1% of net worth for the class) and actual damages, including actual damages of Plaintiff in an amount to be determined at trial along with costs and attorney's fees for the violations of the FDCPA;

2. Statutory and actual damages under NY GBL section 349 including actual damages of Plaintiff in an amount to be determined at trial along with costs and attorney's fees for the violations of NY GBL section 349; and

      3. Any and all other relief deemed just and warranted by this court.

Dated: February 1, 2017

/s/  Mitchell L. Pashkin
Mitchell L. Pashkin (MP 9016)
Attorney For Plaintiff
775 Park Avenue, Suite 255
Huntington, NY  11743
(631) 335-1107
mpash@verizon.net